

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| PEGGY A. HALL | § | CASE NO: 16-20057 |
| Debtor(s) | § | |
| | § | CHAPTER 13 |

### MEMORANDUM OPINION

This Memorandum Opinion resolves Chapter 13 Trustee Cindy Boudloche's objection to confirmation of Peggy Hall's Second Amended Chapter 13 Plan. (ECF Nos. 47; 45). Boudloche objects on the grounds that Hall's plan (1) fails to provide for equal treatment to creditors of the same (or substantially similar) class as required by § 1322(a)(3), and (2) is not proposed in good faith as required by § 1325(a)(3). (ECF No. 47).

### Background

Hall filed her individual Chapter 13 case on February 12, 2016. (ECF No. 1). Hall's husband is not a joint debtor in this case. (*Id.* at 6). In her Schedules, Hall claimed an interest in real estate valued at $162,000.00. Hall indicated that she shared her ownership interest in the property with her husband. (*Id.* at 8). Hall's Schedules reflect that she has no interest in any vehicles. Hall's Schedule D listed the mortgage associated with her real estate as her only secured debt.

In Hall's means test calculation, set forth in Official Form 122C at ECF No. 32, she included the entire amount of her non-filing spouse's income toward her calculation of average monthly income; Hall did not use the marital adjustment for her non-filing spouse's income *not* regularly paid for the household expenses. (ECF No. 32 at 1). It is undisputed that all of Hall's non-filing spouse's income is regularly contributed to the household expenses of the Hall or her

dependents. (ECF No. 42 at 2). Based on Hall's monthly income, she qualifies as an above median income debtor in Texas.[1] (ECF No. 32 at 3).

In her Form 122C, Hall claimed the following deductions when calculating her monthly disposable income:[2]

> (1) Monthly mortgage expense of $1,394.00 (ECF No. 32 at 10).
>
> (2) Her vehicle ownership expenses for two vehicles in the amount of $420.60, plus the deduction for debt payment associated with the vehicles in the amount of $613.40, totaling the IRS standard deduction for two vehicles of $1,034.00. (*Id.* at 7, 10).
>
> (3) Her Vehicle operation expense for two vehicles, totaling $488.00. (*Id.* at 6).

After making all deductions from her current monthly income, Hall calculated her monthly disposable income to be negative $139.96. (*Id.* at 12). Despite showing a calculation that she has no monthly disposable income, her proposed plan provides unsecured creditors with a return of approximately 76 cents on the dollar, paying a total of $17,180 over the course of five years, of which $12,805.60 will be available for general unsecured creditors. (ECF No. 45 at 10).

Hall's non-filing spouse has certain unsecured debts that Hall alleges are separate debts and thus receive no treatment under the plan. These debts include:

> (1) Star Orthodontics: loan for non-filing spouse's orthodontic work ($1,850.00).
>
> (2) Prosper Loans (first): debt consolidation in the name of the non-filing spouse ($1,510.00).
>
> (3) Prosper Loans (second): debt consolidation in the name of the non-filing spouse ($6,200).

---

[1] Hall's average monthly income is $7,327.22, making her current monthly income for the year $87,926.64. (ECF No. 32 at 3). The median family income in Texas for a four-person household is $72,612.00. (*Id.*).

[2] The Court lists only those deductions relevant to the issues addressed in this Memorandum Opinion.

> (4) Walmart Credit Card: credit card in the name of the non-filing spouse ($3,497.00).
>
> (5) SW Chase Credit Card: credit card in the name of the non-filing spouse ($4,901.00).

Hall's non-filing spouse plans to make payments toward these unsecured loans at the same time Hall makes her plan payments. As these unsecured loans are paid off, more of the non-filing spouse's income will be directed toward making plan payments. Hall's proposed plan payments increase substantially over time to reflect this intent. (ECF No. 42 at 2; 45 at 1). It is undisputed that, while the loans are in the name of Hall's non-filing spouse, the debts were incurred for expenses of the household. (ECF No. 42 at 2). In addition to these unsecured debts, Hall's non-filing spouse has an additional secured debt in his name for a vehicle used by Hall's 21-year-old daughter from a previous marriage. Though claimed as a dependent, Hall's daughter is a full-time college student who does not live with Hall and her non-filing spouse. (*Id.*).

Boudloche asserts that Hall's plan unfairly discriminates amongst creditors of a similar class in violation of § 1322(a)(3). Boudloche argues that Hall failed to schedule her non-filing spouse's debts, which were incurred for the benefit of the household and are paid directly by Hall's non-filing spouse. (ECF No. 42 at 2). Boudloche argues that because these debts were incurred for the benefit of the household, they are of a similar class as those treated under the plan. However, general unsecured creditors under Hall's proposed plan will receive only a 76% dividend, whereas Hall's non-filing spouse's creditors will, in theory, be paid in full.

Boudloche reasserts these contentions in her argument that the plan was proposed in bad faith.

Boudloche also argues that Hall improperly reduced her monthly disposable income. Hall's means test reflects that she has a negative projected monthly disposable income. (ECF

No. 32 at 12). Boudloche points out that no marital adjustment was taken, and accordingly all of Hall's non-filing spouse's income is regularly paid for household expenses. Because Hall's Schedules reflect that she owns no vehicles and has no debt secured by vehicles, Boudloche argues that she is not entitled to deduct the expenses associated with the vehicle ownership when calculating her monthly disposable income under the means test. (ECF No. 44 at 3). There is no dispute that Hall is entitled to deduct a $488.00 vehicle operating expense.

## Jurisdiction and Authority

This Court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157.

## Analysis

*Alleged discriminatory treatment of similarly situated creditors*

At the heart of Boudloche's objection is the concern that Hall's debts incurred for the purpose of paying community expenses should be included in her plan—without regard to whether the debt was incurred by Hall or her non-filing spouse. Boudloche directs the Court to 11 U.S.C. § 101(7), which defines "community claim" as "a claim that arose before the commencement of the case concerning the debtor for which property of the kind specified in § 541(a)(2) of this title is liable . . . ." Section 541(a)(2) includes in the bankruptcy estate:

> (2) All interest of the debtor and the debtor's spouse in community property as of the commencement of the case that is—
>
> > (A) under the sole, equal, or joint management and control of the debtor; or
> >
> > (B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is liable.

11 U.S.C. § 541(a)(2). Boudloche argues that because community property under joint management and control is liable for the debts of Hall's non-filing spouse, the debts are community claims that must receive treatment in Hall's plan.

> Creditors holding claims against the debtor or against a nondebtor spouse . . . are entitled to participate in the bankruptcy case, so long as under applicable state law the creditor could have satisfied the claim from community property assets of the type passing to the bankruptcy estate under § 541(a)(2). By granting the nondebtor's creditors the status of community claim holders, Section 101 insures that community property passing to the estate will be divided ratably among all creditors who could have satisfied their claims therefrom under state law. . . . As a result, a creditor of the debtor or nondebtor spouse or former spouse who would have been able to satisfy a claim prior to bankruptcy from community assets which would be section 541(a)(2) property of the estate holds a "community claim" against the debtor's estate, and is entitled to participate in the distribution of community property assets which have passed to the debtor's estate. . . . Thus, an estate containing community property presents a unique situation under the Code in that its assets will be disbursed to both the creditors of the debtor and to entities who are not creditors of the debtor under state law, but who hold community claims under the Code.

2 Collier on Bankruptcy ¶ 101.07[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). To determine the extent to which creditors of Hall's non-filing spouse could have satisfied their claims from property of Hall's bankruptcy estate, the Court must look to Texas community property law.

In Texas, all marital property is either separate or community property. *Hilley v. Hilley*, 342 S.W.2d 565, 567 (Tex. 1961). Separate property is property acquired before marriage or during marriage by gift, devise, or descent. TEX. CONST. ART. XVI, § 15. Community property is property, other than separate property, acquired by either spouse during marriage. TEX. FAM. CODE § 3.202. Community property is either subject to the sole management and control of one spouse, or the joint management and control of both spouses. TEX. FAM. CODE § 3.102. During

marriage, each spouse has the sole management, control, and disposition of the community property that the spouse would have owned if single, including: (1) personal earnings; (2) revenue from separate property; and (3) recoveries for personal injuries.  TEX. FAM. CODE § 3.102(a).  All other community property is subject to joint management and control.  TEX. FAM. CODE § 3.102(c).

A creditor of a spouse may satisfy its claim from that spouse's separate property, community property under that spouse's sole management and control, and community property under joint management and control, without regard to whether the debt was incurred for community or separate activities.  2 Collier on Bankruptcy at ¶ 101.07[3][i]; TEX. FAM. CODE § 3.202.

Hall's separate property and the community property that is subject to her sole management and control is not available to creditors of Hall's non-filing spouse, but community property subject to joint management and control is available to such creditors.  *In re Kim*, 405 B.R. 179, 185 (Bankr. N.D. Tex. 2009) ("to the extent that community property is subject to equal or joint management and control by the spouses, a petition by one spouse alone passes all of such community property . . . to the estate.").  Jointly managed and controlled community property assets in Hall's bankruptcy estate are liable for the debts of Hall's non-filing spouse, and accordingly, those creditors hold community claims and are entitled to treatment under Hall's plan.

As set forth above, the term "Community Claim" is a bankruptcy concept.  It is not a concept under Texas law.  The definition of a "Community Claim" mandates a determination of whether Estate property might be liable for the claim.  Estate property includes community property that is under the debtor's sole, equal, or joint management and control.  11 U.S.C.

§ 541(a)(2)(A). Accordingly, to apply the bankruptcy law's "Community Claim" concept, we must define property rights in accordance with state law. <u>Butner v. United States</u>, 440 U.S. 48, 54 (1979).

It is unclear whether creditors holding Community Claims were properly scheduled in Hall's schedules. Similarly, it is unclear whether those creditors were given notice of the bankruptcy case and an opportunity to file a claim. Holders of allowed unsecured proofs of claim, whether Community Claims or otherwise, are treated in section 10 of Hall's proposed plan. Under the proposed plan, all holders of unsecured claims are treated identically.

*Alleged bad faith*

Boudloche alleges that a proposed plan that provides partial payment to all holders of unsecured claims is filed in bad faith if a non-filing spouse intends to pay certain of those creditors out of their future earnings. In the context of this case, those earnings are not estate property. TEX. FAM. CODE § 3.102(a). A bankruptcy discharge does not preclude the payment of a debt, by the debtor or by any other person. 11 U.S.C. § 524(f). The bankruptcy discharge merely precludes the enforcement by the creditor of personal liability against the debtor of a discharged debt.

We see no bad faith in a non-debtor spouse making payments. Of course, the non-debtor's payments may not reduce the amount payable to creditors under the plan. As set forth below, the payments under the plan are inadequate to meet the requirements of the Bankruptcy Code. The Court sustains the Trustee's objection to confirmation, but not because the plan is necessarily proposed in bad faith.

*Improper deduction of non-filing spouse's secured debt*

It is undisputed that Hall is an above-median-income debtor. The means test "is not only the starting point in calculating above-median-income Chapter 13 debtor's 'projected disposable income,' but in most cases, it is determinative." *In re Cranmer*, 697 F.3d 1314, 1318 (10th Cir. 2012). A debtor with negative projected disposable income, as calculated by the means test, can confirm a plan that provides for no distribution to general unsecured creditors, even if Schedules I and J reflect that the debtor has surplus monthly net income. *In re Smith*, 549 B.R. 188, 191 (Bankr. N.D. Miss. 2016). This is achievable because the means test excludes certain types of income (social security benefits, for example), and because, in most cases, the IRS standard deduction represents the amount an above-median-income debtor may deduct in order to calculate projected disposable income, whether or not they spend the entire amount in any given month. *See In re Ragos*, 700 F.3d 220, 225 (5th Cir. 2012) (holding that social security benefits are excluded from the projected disposable income calculation); 11 U.S.C. § 707(b)(2)(A)(ii)(I) ("The debtor's monthly expenses *shall be* the debtor's applicable monthly expense amounts specified under the [IRS Standards] . . . .") (emphasis added); *But see Ransom v. FIA Card Serv. N.A.*, 562 U.S. 61, 64 (2011) (finding that the debtor must qualify for a deduction by actually incurring an expense in the relevant category).

If a trustee objects, a bankruptcy court may not confirm a plan unless the plan provides for all of the debtor's projected disposable income received during the life of the plan to be applied to payments to unsecured creditors. 11 U.S.C. § 1325(b)(1)(B); *In re Waechter*, 439 B.R. 253, 255 (Bankr. D. Mass. 2010). Hall's current proposed plan reflects that she has a negative monthly disposable income. If accurate, Hall could theoretically confirm a plan even if it proposed to pay general unsecured creditors nothing.

However, Boudloche objected to certain of the deductions Hall took in calculating her monthly disposable income under the means test. Specifically, Boudloche objects to Hall deducting vehicle ownership/secured debt expenses where, by Hall's own admission, she owns no vehicles and has no debt secured by vehicles. The vehicles, she alleges, are owned by her non-filing spouse.

Hall asserts that all of her non-filing spouse's income is dedicated to household expenses. The Court disagrees. The debt payments secured by vehicles that are titled in Hall's non-filing spouse's name are not household expenses. Accordingly, the amount of Hall's non-filing spouse's monthly principal and interest payments for the vehicles must be deducted as a marital adjustment, and may not be deducted as Hall's vehicle ownership/secured debt expenses in the means test.

The means test begins with current monthly income as defined by the Code. Under § 101(10A) of the Bankruptcy Code, the term "current monthly income" means:

> (A) [] the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on—
>
> > (i) the last day of the calendar month immediately preceding the date of the commencement of the case . . . .

11 U.S.C. § 101(10A). Also included in current monthly income is "any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents . . . ." 11 U.S.C. § 101(10A). In light of § 101(10A), Official Form 122C permits Hall to take a "marital adjustment" if the debtor is married and her spouse is not a joint debtor in the case. The marital adjustment only applies to income "that [is] *not* regularly paid for the household expenses of [the debtor or the debtor's dependents]." Official Form 122C

(emphasis added); *See In re Pennington*, 2013 WL 1176235 (S.D. Tex. March 21, 2013) ("If the non-filing spouse's income is not regularly contributed for household expenses, it should not be included in calculating a debtor's disposable income and should be 'deducted' from current monthly income as a marital adjustment.").

Conversely, no marital adjustment may be taken for that portion of the non-filing spouse's income that *is* regularly paid towards the household expenses of the debtor or the debtor's dependents. *In re Vollen*, 426 B.R. 359 (Bankr. D. Kan. 2010)(finding that the amounts paid that are regularly contributed to the household expenses of debtor and her dependents may not be deducted as a marital adjustment). The determination of what amount a non-filing spouse contributes on a regular basis for household expenses of the debtor or the debtor's dependents is fact specific and subject to interpretation. *In re Sale*, 397 B.R. 281, 287 (Bankr. M.D.N.C. 2007)

Under § 101(10A), current monthly income includes any money received by the debtor from a non-debtor source on a regular basis for the household expenses of the debtor or debtor's dependent. It might initially appear that monthly payments toward an auto loan would qualify as a household expense. However, § 707(b)(2)(A)(ii) is unequivocal that "monthly expenses of the debtor shall not include any payments for debts." 11 U.S.C. § 707(b)(2)(A)(ii); *In re Shahan*, 367 B.R. 732 (Bankr. D. Kan. 2007) ("The statutory predicate for deducting debt payments from disposable income resides in § 707(b)(2)."). Instead, debts are addressed by § 707(b)(2)(A)(iii). Under that subsection, future payments on secured debts are a deduction in calculating projected disposable income; but they are a deduction that is distinct from the deduction of household expenses. The deduction is allowed as: "The debtor's average monthly payments on account of secured debts shall be calculated as the sum of—the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the

filing of the petition . . . ." § 707(b)(2)(A)(iii).  Put simply, payments toward debts are not expenses as contemplated by § 101(10A).

Because the payments made on the debt secured by the vehicles titled in Hall's non-filing spouse's name are not expenses, they are not "household expenses" to which he is contributing. Nevertheless, Hall's non-filing spouse is not left without recourse.  Because the vehicle expenses are not household expenses, the payments may be deducted under the marital adjustment. However, the payments may not be deducted as both a marital adjustment *and* as a vehicle ownership/secured debt payment deduction (lines 13 and 33 of Official Form 122C, respectively).

This "double dipping" concern was addressed in *In re Trimarchi*, 421 B.R. 914 (Bankr. N.D. Ill. 2010).  In *Trimarchi*, the trustee objected to the debtor taking both (1) a marital adjustment for a mortgage of expense of $2,316.00 paid by the debtor's non-filing spouse, and (2) the IRS standard deduction.  The Court held that the debtor could not take both deductions, and determined that because the mortgage expense was a household expense, the marital adjustment was inappropriate.  *In re Trimarchi*, 421 B.R. 914, 922 (N.D. Ill. 2010).

While this Court disagrees with the ultimate categorization of the mortgage expense in *Trimarchi* as a household expense, the double deduction analysis is sound.  Hall is not entitled to invoke the vehicle ownership deduction and secured debt payment deduction in the means test because she makes no monthly payments on debt secured by vehicles she does not own.  *See* 11 U.S.C. § 707(b)(2)(A)(iii).

In a bankruptcy case, whether a claim is a secured claim is determined by § 506.  A secured claim is a claim that is "secured by a lien on property in which the estate has an interest." 11 U.S.C. § 506.  Hall's theory, embodied in her plan, that her non-filing spouse may pay the

vehicle notes from his earnings is premised on the fact that the vehicles are non-estate property. It is undisputed that the vehicles are titled in the non-filing spouse's name. Neither Boudlache nor Hall have argued that the vehicles are estate property, and it is certainly possible that the vehicles are sole management property not includible in the estate. *See In re Trammell*, 399 B.R. 177, 183-84 (Bankr. N.D. Tex. 2007) (finding that a vehicle titled in the name of a non-debtor spouse was subject to that spouse's sole management and control, and consequently, was not included in the debtor's bankruptcy estate). On that assumption, the claims secured by the vehicles would not be secured by estate property under § 506 and the holder of the liens against the vehicles would have no claim against the debtor.

A similar approach was used by the court in *In re Shahan*. In *Shahan*, the court determined that the mortgage payments made by the debtor's non-filing spouse on a home that was titled in the non-filing spouse's name and payments made on a vehicle that was also titled in the non-filing spouse's name, were not considered to be amounts paid on a regular basis for household expenses of the debtor. *In re Shahan*, 367 B.R. 732, 737-38 (Bankr. D. Kan. 2007)). The court in *Shahan* suggested that the debtor utilize the marital adjustment to capture the non-filing spouse's payments on the debts secured by the home and vehicle.

Recharacterizing the deduction is not without consequence. Hall's non-filing spouse's vehicle payments total $613.40. Hall claimed a standard vehicle ownership deduction totaling $1,034.00, a difference of $420.60. This loss of $420.60 in deductions increases Hall's monthly disposable income by that amount, resulting in a monthly disposable income of $280.64.

With monthly disposable income of $280.64 and an objection by the Trustee, Hall's plan must distribute not less than $16,838.40 to the holders of unsecured claims. 11 U.S.C.

§ 1325(b)(1)(B). Hall's plan does not purport to make such a distribution. Accordingly, it may not be confirmed.

## Conclusion

The Court will issue and Order consistent with this Memorandum Opinion

SIGNED **October 4, 2016.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE